IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| COMMIE COX-BOTTOSON,<br><br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | CASE NO. 1:25-CV-00543-DAC<br><br>MAGISTRATE JUDGE DARRELL A. CLAY<br><br>**MEMORANDUM OPINION AND ORDER** |

### INTRODUCTION

Plaintiff Commie Cox-Bottoson challenges the Commissioner of Social Security's decision denying supplemental security income (SSI). (ECF #1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). This matter was referred to me under Local Civil Rule 72.2 to prepare a Report and Recommendation. (Non-document entry dated Mar. 20, 2025). The parties then consented to my exercising jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF #4). For the reasons below, I **AFFIRM** the Commissioner's decision.

### PROCEDURAL BACKGROUND

Ms. Cox-Bottoson applied for SSI on October 27, 2022, alleging she became disabled on November 9, 2021 due to osteoarthritis in her back and knees, shortness of breath, gastroesophageal reflux disease, anxiety, depression, and post-traumatic stress disorder.[1] (Tr. 353,

---

[1] Ms. Cox-Bottoson also applied for disability insurance benefits but represents to this Court she withdrew the application and her supplementary fact sheet identifies only an SSI application on appeal. (*See* ECF #10 at PageID 1440; ECF #9 at PageID 1437). Based on these representations, I discuss only the SSI application.

1

481, 498). After the claim was denied initially and on reconsideration, Ms. Cox-Bottoson requested a hearing before an Administrative Law Judge. (Tr. 353, 370, 404). On January 5, 2024, Ms. Cox-Bottoson (represented by counsel) and a vocational expert (VE) testified before an ALJ, following which the ALJ determined she was not disabled. (Tr. 294-311, 220-32). On January 28, 2025, the Appeals Council denied Ms. Cox-Bottoson's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-4; *see also* 20 C.F.R. § 416.1481. Ms. Cox-Bottoson timely filed this action on March 20, 2025. (ECF #1).

## Factual Background

### I. Personal and Vocational Evidence

Ms. Cox-Bottoson was 46 years old on her alleged onset date and 48 years old at the hearing. (*See* Tr. 481). She has a GED. (*See* Tr. 531). She has past relevant work experience as a computer repairer. (Tr. 306).

### II. Relevant Medical Evidence

In May 2021, Ms. Cox-Bottoson was involved in a low-speed car accident and seen at the emergency room where she reported her chronic back pain had been exacerbated and was prescribed pain medications. (Tr. 647, 651). X-ray imaging of her lower back showed mild facet arthropathy (joint disease) in the lower lumbar spine but no acute fracture or dislocation. (Tr. 666).

In August 2021, Ms. Cox-Bottoson established care with Dr. Brittany Shrefler for her back pain. (Tr. 629). Ms. Cox-Bottoson believed she could walk about ten minutes, though needed breaks for shortness of breath. (Tr. 630). Dr. Shrefler diagnosed Ms. Cox-Bottoson with lumbar

back pain and osteitis condensans ilii.[2] (Tr. 632). Ms. Cox-Bottoson returned in October with similar complaints and Dr. Shrefler prescribed Lyrica.[3] (Tr. 633-35).

Ms. Cox-Bottoson returned to Dr. Shrefler in November 2021 complaining of, among other things, back and knee pain, stumbling, numbness and tingling in her legs, and disequilibrium. (Tr. 617). She reported being unable to sit for more than six hours at a time and stand or walk for more than ten minutes before needing a break. (Tr. 616). She reported walking with a cane. (Tr. 617). A physical examination found point midline tenderness with a sudden jerk of pain at the L4-L5 vertebrae and 4+ or 5/5 motor function. (Tr. 618-19).

Ms. Cox-Bottoson returned to Dr. Shrefler in January, April, and May 2022 for regular follow-up visits. (Tr. 726, 728, 683-84, 732-33). Her back pain worsened with the cold and climbing stairs and she reported dizziness and walking with a cane. (Tr. 726, 684). In April, Dr. Shrefler referred Ms. Cox-Bottoson to a physical medicine and rehabilitation clinic and a pain-management clinic. (Tr. 686).

Ms. Cox-Bottoson visited the referred physical medicine and rehabilitation clinic in May 2022. (Tr. 710). She rated her back pain as an eight out of ten and described it as sharp; intense; intermittent; daily; radiating to her thighs; worsening with activity, walking, or sitting; and improving with medication, rest, and change of position. (*Id.*). A physical examination found a

---

[2] Osteitis condensans ilii is "a non-progressive condition marked by sclerosis (hardening) of the iliac bones" in the pelvis that is "often asymptomatic" but can "present as nonspecific lower-back pain." *See* Peter M. Williams; Doug W. Byerly, *Osteitis Condensans Ilii*, *StatPearls*, http://www.ncbi.nlm.nih.gov/books/NBK551569/ (last accessed Nov. 14, 2025).

[3] Lyrica is a brand name for pregabalin, a medication prescribed to relieve neuropathic pain. *See Pregabalin*, *MedlinePlus*, http://medlineplus.gov/druginfo/meds/a605045.html (last accessed Nov. 14, 2025).

3

stable gait, a limited range of motion in her lower back, and minimal tenderness. (Tr. 713). She was recommended a home exercise program and pain-management treatment. (Tr. 714).

Also in May 2022, Ms. Cox-Bottoson went to the referred pain-management clinic. (Tr. 718). She made similar complaints about her pain but also reported using a cane because of balance issues. (*Compare* Tr. 718 *with* Tr. 713). A physical examination found a limited range of motion of the lumbar spine, positive facet loading, severe tenderness of the lumbar spine, limited range of motion of the hip with mild tenderness, a positive Patrick's test with tenderness of the sacroiliac joint, and minimal crepitus of the knees. (Tr. 721). She was diagnosed with lumbar spinal stenosis with neurogenic claudication. (*See id.*). While lumbar epidural steroid injections, peripheral nerve stimulation, facet blocks, and acupuncture were discussed, she refused those treatment modalities and no medications were prescribed. (*See id.*).

X-ray imaging was taken of Ms. Cox-Bottoson's right knee in June 2022 and of her left knee in August and both showed osteoarthritis and the left-knee x-ray showed a likely loose body. (Tr. 1261, 1322).

Ms. Cox-Bottoson returned to Dr. Shrefler in December 2022 for a regular follow-up visit. (Tr. 1152). Her knee pain was worse because she had twisted her right knee while crossing the street to avoid a fast-moving car. (Tr. 1153). She also reported lightheadedness and losing her balance, which would become so bad she would stay in bed out of fear of falling. (*Id.*). She also reported walking for about two-to-three minutes before becoming tired. (*Id.*). A physical examination found pain to palpation in her right knee, crepitus with patellar grind in her left knee, that she walked slowly while using a cane, and she could move all limbs with at least three-out-of-five strength. (Tr. 1154).

4

Ms. Cox-Bottoson followed up again with Dr. Shrefler in February 2023. (Tr. 1189). She reported swelling and significant pain in both her knees, that her back pain was helped by a back brace, and lightheadedness was still present. (*Id.*). A physical examination found pain to palpation of the bilateral joint lines, pain to palpation in her right knee, crepitus with patellar grind in her left knee, she used a cane but could walk without assistance though with an antalgic gait, and she could move all limbs with at least three-out-of-five strength. (Tr. 1190).

Ms. Cox-Bottoson went to the emergency room in April 2023 for knee and back pain. (Tr. 1198). A physical examination found diffuse lower-back tenderness in the midline lumbar spine and a full range of motion in both legs. (Tr. 1197). She was prescribed pain medications and muscle relaxers that improved her pain and she could walk independently. (Tr. 1198).

That same month, Ms. Cox-Bottoson also followed up with Dr. Shrefler, reporting she developed sharp back pain while cooking that caused her legs to buckle and her right knee to swell. (Tr. 1214). A physical examination found significant pain in her midline lumbar spine and paraspinal areas; she could move all limbs with at least three-out-of-five strength; and she used her cane and back brace. (Tr. 1215). X-ray imaging of her lumbar spine taken later that month revealed continued arthritic changes but no fracture or listhesis (a vertebra out of alignment), vertebral heights were maintained, and minimal multilevel degenerative changes. (Tr. 1209-10).

Ms. Cox-Bottoson followed up again in June 2023 complaining her back pain was bothering her more. (Tr. 1285). A physical examination yielded the same findings as the April examination. (*Compare* Tr. 1286 *with* Tr. 1215).

### III.   Relevant Opinion Evidence

On February 11, 2023, state agency medical consultant Steve McKee, M.D., evaluated Ms. Cox-Bottoson's medical records as part of the initial evaluation of her disability application.

5

(Tr. 357-59). Dr. McKee opined Ms. Cox-Bottoson could lift and carry 20 pounds occasionally and 10 pounds frequently; frequently balance; occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; never climb ladders, ropes, or scaffolds; and must avoid all exposure to environmental hazards such as machinery and unprotected heights. (Tr. 358). On reconsideration, state agency medical consultant Jerry Davis, M.D., reviewed additional medical records and affirmed the initial findings. (Tr. 365-66).

On October 13, 2023, Dr. Shrefler completed a medical source statement form assessing Ms. Cox-Bottoson's functional capacity. (Tr. 1375, 1377). Dr. Shrefler opined Ms. Cox-Bottoson could lift and carry at most five pounds; walk and stand for one hour in an eight-hour workday, sit for six hours in an eight-hour workday; never climb, balance, stoop, crouch, kneel, or crawl; and frequently reach, push, pull, and manipulate things. (*Id.*). Dr. Shrefler noted Ms. Cox-Bottoson is prescribed a cane and walker; must be free to elevate her legs and switch between sitting, standing, and walking at will; and needs an additional half-hour break each day. (Tr. 1377).

## IV. Relevant Testimonial Evidence

Ms. Cox-Bottoson explained she cannot work because of her arthritis, lower-back and knee pain, anxiety, and depression. (Tr. 297). She takes medication for her pain and was in counseling, though she was between counselors at the date of the hearing. (*Id.*). Her medications elevate her heart rate and cause dizziness and drowsiness. (Tr. 300). She will bandage her feet or legs to control swelling and wears a back brace for pain. (Tr. 303-04).

Ms. Cox-Bottoson lives with her husband, adult children, and one grandchild. (Tr. 295). Her typical day involves waking, eating, taking her medicine, and watching TV. (*See* Tr. 295-96). She cooks, cleans, washes dishes, and goes shopping. (Tr. 296). She can drive. (Tr. 295). But when

6

doing household chores, she has to sit and stand to avoid pain and elevate her feet to stool level. (Tr. 303). And arthritis limits the range of motion in her arms. (Tr. 296).

She estimates she can lift and carry five pounds at most and can stand for ten minutes, walk for fifteen minutes, and sit for ten-to-fifteen minutes before needing a break. (Tr. 300-01). She uses a cane and a walker when she has to walk despite pain so that she does not lose her balance and fall. (*See* Tr. 300). When she leaves the house, she takes not only her cane but also has her husband to accompany her. (Tr. 301). If she sits for too long, her back or legs begin to hurt. (*Id.*). She can climb stairs slowly and must climb stairs to get to her bedroom. (*Id.*). She can stoop and crawl, though she would have to take her time. (Tr. 302). She has no trouble holding things in her hands and reaching for things. (Tr. 301).

The VE opined based on his experience that using a cane for ambulation would not preclude sedentary work but using an assistive device for balance would preclude such work. (Tr. 309). Similarly, the VE opined using a cane would preclude all light work. (Tr. 310).

## STANDARD FOR DISABILITY

Eligibility for benefits turns on the existence of a disability. 42 U.S.C. § 423(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a).

The Commissioner follows a five-step evaluation process found at 20 C.F.R. § 416.920 to determine whether a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

7

2.    Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3.    Does the severe impairment meet one of the listed impairments?

4.    What is claimant's residual functional capacity and can claimant perform past relevant work?

5.    Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. § 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## THE ALJ'S DECISION

At Step One, the ALJ determined Ms. Cox-Bottoson had not engaged in substantial gainful activity since her disability date. (Tr. 223). At Step Two, the ALJ identified "degenerative disc disease of the lumbar spine with osteitis condensans ilii; osteoarthritis of the knees; obesity; depression; anxiety disorder; and post-traumatic stress disorder" as severe impairments. (*Id.*). At Step Three, the ALJ found Ms. Cox-Bottoson's impairments did not meet the requirements of, nor were medically equivalent to, a listed impairment. (Tr. 224-26).

At Step Four, the ALJ determined Ms. Cox-Bottoson's RFC as follows:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 416.967(a) except uses cane for ambulation; occasionally climb ramps and stairs; no ladders, ropes, or scaffolds; occasional balance, stoop, kneel, crouch, and crawl; no hazardous machinery, unprotected heights; and the claimant is limited to simple routine tasks, simple short instructions, simple decisions, occasional

8

workplace changes, no strict production rate or hourly quotas, and occasional interaction with coworkers, supervisors, and the public.

(Tr. 226) (cleaned up). The ALJ then found Ms. Cox-Bottoson could not perform her past relevant work as a computer repairer. (Tr. 230). At Step Five, the ALJ found Ms. Cox-Bottoson could perform other work in the national economy such as a circuit-board assembler, final assembler, and address clerk. (Tr. 231). Thus, the ALJ concluded Ms. Cox-Bottoson was not disabled. (*Id.*).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Hum. Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). But

> [A] substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight.

*Brooks v. Comm'r of Soc. Sec.*, 531 F.App'x 636, 641 (6th Cir. 2013) (cleaned up).

In determining whether substantial evidence supports the Commissioner's findings, the court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Hum. Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Even if

9

substantial evidence (or indeed a preponderance of the evidence) supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is because there is a "zone of choice" within which the Commissioner can act without fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Apart from considering whether substantial evidence supports the Commissioner's decision, the court must determine whether proper legal standards were applied. The failure to apply correct legal standards is grounds for reversal. *Walters,* 127 F.3d at 528. Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not observe its own regulations and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004).

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted); *accord Shrader v. Astrue*, No. 11-13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked.").

## DISCUSSION

Ms. Cox-Bottoson argues the ALJ erred in two ways: (1) by finding Dr. Shrefler's opinion persuasive but cherry-picked which of the opined limitations were included the RFC and (2) by determining Ms. Cox-Bottoson's cane was necessary for ambulation only and not for balance. (*See* ECF #10 at PageID 1451, 1454-55). The Commissioner responds the ALJ properly found Dr.

Shrefler's opinion partially persuasive and that Ms. Cox-Bottoson can balance without a cane and substantial evidence supports those findings. (ECF #12 at PageID 1463-66).

**I.      The ALJ properly explained why some of Dr. Shrefler's opined limitations were not persuasive because they were based on Ms. Cox-Bottoson's self-reports that were inconsistent with other evidence.**

Ms. Cox-Bottoson first argues the ALJ erred when analyzing Dr. Shrefler's opinion by finding the opinion persuasive but cherry-picking only the limitations that were consistent with the RFC. (*See* ECF #10 at PageID 1451). She also argues the ALJ inadequately explained why some of the limitations Dr. Shrefler opined were persuasive and some were not. (*Id.* at PageID 1453-54).[4] The Commissioner responds that substantial evidence supports the ALJ's analysis and when reading the decision as a whole, Dr. Shrefler's examination findings did not support the limitations she opined and her opinion was inconsistent with other medical evidence. (ECF #12 at PageID 1463-65).

When crafting the RFC at Step Four, the ALJ must review all medical opinions and prior administrative findings and explain how persuasive she finds them. *See* 20 C.F.R. § 416.920c(b); *see also Reeves v. Comm'r of Soc. Sec.*, 618 F.App'x 267, 275 (6th Cir. 2015). The ALJ must determine the persuasiveness of a medical source's opinion using a five-factor analysis: (1) supportability; (2) consistency; (3) the source's relationship with the claimant, including length

---

[4] Ms. Cox-Bottoson also argues "the ALJ failed to provide any explanation for the rejection of Herron's subjective complaints of pain in his hands and fingers." (ECF #10 at PageID 1453). She provides no further explanation, does not identify Herron, and does not connect this with Ms. Cox-Bottoson's complaints of numbness in her fingers. To the extent Ms. Cox-Bottoson argues the ALJ erred by omitting any discussion of handling or fingering limitations, such a threadbare argument is deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.").

11

of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship; (4) the source's specialization; and (5) any other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 416.920c(c)(1)-(5). Supportability and consistency are the most important factors the ALJ must consider. *Id.* § 416.920c(b)(2); *see also Palmore v. Comm'r of Soc. Sec.*, No. 1:20-cv-36, 2021 WL 1169099, at *4 (S.D. Ohio Mar. 29, 2021). As a result, the ALJ must "*explain* how [the ALJ] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision. *See* 20 C.F.R. § 416.920c(b)(2) (emphasis added). If the ALJ discusses both of those factors and substantial evidence supports the discussion, the reviewing court may not disturb the ALJ's findings. *Paradinovich v. Comm'r of Soc. Sec.*, No. 1:20-cv-1888, 2021 WL 5994043, at *7 (N.D. Ohio Sept. 28, 2021), *report and recommendation adopted*, 2021 WL 5119354 (N.D. Ohio Nov. 4, 2021).

      The ALJ evaluated Dr. Shrefler's opinion as follows:

> The opinion of Brittany Shrefler, M.D., dated October 13, 2023 is persuasive in that she found that the claimant can sit for six hours in an eight-hour day, never climb ladders, ropes or scaffolds, and has no restrictions to temperature extremes, pulmonary irritants and noise, which is consistent with the evidence in the record. However, she indicated that the claimant can only lift five pounds, stand and walk for one hour in an eight hour day, never balance, stoop, kneel, crouch or crawl, would be limited to frequent reaching, pushing and pulling, fine and gross manipulation, would need to alternate between sitting, standing and walking, and would need an additional unscheduled break of one half hour but these limitations appear to be based on the claimant's self-reports and the overall evidence does not establish that the claimant is that limited. Further, she indicated that the claimant would not have any restrictions to heights or moving machinery but the overall evidence indicates that the claimant is limited to no unprotected heights or hazardous machinery due to her back and knee impairments.

(Tr. 229-30).

      First, Ms. Cox-Bottoson's argument that the ALJ found the opinion persuasive but then cherry-picked from the opinion the limitations that were consistent with the RFC is unpersuasive.

12

(*See* ECF #10 at PageID 1440, 1451). The above discussion shows the ALJ found Dr. Shrefler's opinion to be partially persuasive where some limitations were consistent with the record but others were not. It is not cherry-picking for an ALJ adopt only the portions of a medical opinion the ALJ finds persuasive so long as the court can follow the rationale of the decision. *See Harrington v. Kijakzi*, No. 20-cv-10954, 2021 WL 3486278, at *5 (E.D. Mich. Aug. 9, 2021).

Ms. Cox-Bottoson also argues the ALJ inadequately explained why some of the limitations Dr. Shrefler opined were persuasive and some were not. (ECF #10 at PageID 1453-54). The Commissioner responds that Dr. Shrefler's opinion was (1) not supported by Dr. Shrefler's own examination findings and Ms. Cox-Bottoson's choice for conservative treatment and (2) the opinion is inconsistent with the X-ray imaging of her lower back and right knee, other physician's examination findings, and the prior administrative medical findings. (ECF #12 at PageID 1464-65).

I need not address the Commissioner's arguments that those reasons provided substantial evidence because the ALJ did not include those reasons in the analysis of Dr. Shrefler's opinion. The ALJ's analysis states that the rejected limitations "appear[ed] to be based on the claimant's self-reports" and "the overall evidence does not establish that the claimant is that limited." (Tr. 229). The Supreme Court has long held that a reviewing court assessing the decision of an administrative agency must judge its propriety solely by the grounds invoked by the agency. *See S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196 (1947). It falls to the agency, not its counsel, to articulate a satisfactory explanation for its actions. *See Hicks v. Comm'r of Soc. Sec.*, 909 F.3d 786, 808 (6th Cir. 2018). Thus, the issue is whether the ALJ's stated reasons that the rejected limitations

13

"appear[ed] to be based on the claimant's self-reports" and "the overall evidence does not establish that the claimant is that limited" was an acceptable explanation.

To start, it is true the ALJ's analysis did not expressly mention the supportability and consistency factors. While an ALJ need not use the exact words "supportability" or "consistency" to consider these factors, the ALJ's discussion still must substantively engage with these factors such that a reviewing court can follow the ALJ's reasoning. *See Belnap v. Comm'r of Soc. Sec.*, No. 1:22-cv-202, 2022 WL 17669388, at *6 (N.D. Ohio Dec. 14, 2022). In doing so, the court "read[s] the ALJ's decision as a whole and with common sense." *Buckhannon v. Astrue*, 368 F.App'x 674, 678-79 (7th Cir. 2010); *see also Crum v. Comm'r of Soc. Sec.*, 660 F.App'x 449, 457 (6th Cir. 2016) (affirming ALJ's evaluation of opinion where "[e]lsewhere in her decision, the ALJ laid out in detail the treatment records" undercutting the opinion). Reading the ALJ's decision as a whole and with common sense, the ALJ's rationale is roundabout but can be followed. While the explanation that the "overall evidence does not establish" Ms. Cox-Bottoson is not as limited as opined is vague, conclusory, and unhelpful, the explanation that the rejected limitations "appear to be based on the claimant's self-reports" read together with the ALJ's analysis of Ms. Cox-Bottoson's testimony substantively applies the supportability and consistency factors.

First, the ALJ's statement that the opined limitations are not established by "the overall evidence" is not an explanation. This is unlike the ALJ's mention of Ms. Cox-Bottoson's self-reports because that referred to a discussion earlier in the decision and that discussion made findings inconsistent with the rejected limitations. A vague reference gesturing to "the overall evidence" when evaluating consistency and supportability of medical opinions does not create a logical bridge between the rejected limitations and the record. *See Eckert v. O'Malley*, No. 5:22-cv-

14

316, 2024 WL 841765, at *4 (E.D. Ky. Feb. 28, 2024) (holding ALJ's reference to "objective medical evidence" without explanation was insufficient). The Court will not infer what evidence the ALJ *might* have been considering and hypothesize possible explanations the ALJ *could* have articulated. *See Cox v. Comm'r of Soc. Sec.*, 615 F.App'x 254, 260-61 (6th Cir. 2015).

The other reason the ALJ offered for rejecting part of Dr. Shrefler's opinion was that the rejected limitations "appear[ed] to be based on [Ms. Cox-Bottoson]'s self-reports." (Tr. 229). This does provide an explanation and applies the persuasiveness factors, albeit in a roundabout manner, the Court can follow the reasoning. An ALJ may properly discount a medical opinion because it was based on a claimant's subjective complaints where the claimant's complaints were not supported by or consistent with the objective medical evidence. *See Gasiewski v. Comm'r of Soc. Sec.*, No. 4:22-cv-2194, 2023 WL 5673034, at *9 (N.D. Ohio Aug. 14, 2023) (collecting Sixth Circuit and district court cases), *report and recommendation adopted*, 2023 WL 5671936 (N.D. Ohio Sept. 1, 2023). But a conclusory determination that a treating physician's opinion is unpersuasive because it is based on incredible reports by a claimant "without any elaboration or detail" is insufficient. *Winning v. Comm'r of Soc. Sec.*, 661 F.Supp.2d 807, 821 (N.D. Ohio 2009).

The ALJ's statement that the rejected limitations "appear to be based on the claimant's self-reports" is conclusory but nevertheless calls to the ALJ's earlier analysis of Ms. Cox-Bottoson's testimony. There, the ALJ found her impairments "could reasonably be expected to cause the alleged symptoms" but her self-reported symptoms were "not entirely consistent with the medical evidence." (Tr. 228). The ALJ contrasted her allegations of disabling back and knee pain against imaging of her back and knee showing mild multilevel degenerative changes in her back and osteoarthritis and a likely loose body in her knee; her treatment being primarily medication; and

15

physical examination findings showing good-to-normal muscle strength, intact sensation, ability to walk without assistance, and a gait only sometimes antalgic. (Tr. 227-28).

 Ms. Cox-Bottoson does not challenge the ALJ's analysis of her testimony. And those findings do not support and are inconsistent with the rejected limitations. For instance, walking without assistance and a sometimes antalgic gait a do not support and are inconsistent with the opined limitation that Ms. Cox-Bottoson can never balance, stoop, kneel, crouch, or crawl. Also, good-to-normal muscle strength and intact sensation do not support and are inconsistent with the opined limitation to lifting only five pounds and frequent manipulation, pushing, and pulling. These findings thus lend substantial evidence to the otherwise conclusory statement that the rejected limitations in Dr. Shrefler's opinion were unpersuasive because they "appeared to be based on the claimant's self-reports." (Tr. 229). While it would have been helpful for the ALJ to have provided greater detail when analyzing Dr. Shrefler's opinion, I conclude after reading the decision as a whole and with common sense that the ALJ engaged with the consistency factor by discussing Ms. Cox-Bottoson's testimony in a way that the court can follow the reasoning.

 In sum, though not a model of analysis, the ALJ's rationale can be followed. The explanation that the "overall evidence does not establish" Ms. Cox-Bottoson is as limited as Dr. Shrefler opined is vague, conclusory, and unhelpful. But the explanation that the rejected limitations "appear to be based on the claimant's self-reports," together with the ALJ's analysis of Ms. Cox-Bottoson's testimony, ties together how the rejected limitations were not supported by and inconsistent with the imaging, her treatment modality, and the physical examination findings. *See Crum*, 660 F.App'x at 457. Because the ALJ substantively applied the supportability and consistency factors to the rejected limitations, I decline to order remand on this basis.

16

**II.    Substantial evidence supports the ALJ's finding that the Ms. Cox-Bottoson's cane was not medically required for balancing.**

Ms. Cox-Bottoson's second argument is the ALJ failed to properly address whether her cane was medically required to maintain balance and this error was harmful because the VE testified that using a cane for balance would preclude sedentary work. (ECF #10 at PageID 1455). The Commissioner responds that the ALJ adequately addressed Ms. Cox-Bottoson's balance and gait difficulties and weighed the conflicting evidence about her balance to determine she could occasionally balance. (ECF #12 at PageID 1466).

A hand-held assistive device like a cane must be included in the RFC when it is medically required. *Carreon v. Massanari*, 51 F.App'x 571, 575 (6th Cir. 2002). To be medically required, there must be "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (*i.e.*, whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." *See* Soc. Sec. Ruling (SSR) 96-9p, 1996 WL 374185, at *7 (S.S.A. July 2, 1996). A claimant's subjective desire to use a cane is not enough. *See Carreon*, 51 F.App'x at 575.

The ALJ discussed Ms. Cox-Bottoson's use of assistive devices at multiple steps in the sequential analysis. The ALJ primarily discussed the cane when analyzing Ms. Cox-Bottoson's testimony at Step Four:

> She stated that she has both a cane and a walker. She indicated that she will use the cane when she is in pain and uses the walker when she is dizzy and feels like falling. She stated that she takes her cane when she leaves the house. She also stated that she wears a back brace all the time. She testified that she can sit for 10-15 minutes, stand for 10 minutes and walk for 15 minutes.

(Tr. 227). Next, the ALJ discussed the medical evidence about her walking and balancing:

> Physical exams have noted some tenderness and limited range of motion of the hips and lumbar spine and swelling and crepitus of the knees, but good to normal muscle

17

> strength at 4/5 to 5/5 and intact sensation. While the claimant uses a cane, the evidence indicates that she can walk without assistance. Furthermore, while her gait has been described as antalgic at times, on other occasions, it has been described as stable.

(Tr. 228). The ALJ also discussed her use of a cane at Step Three, where a criterion of the relevant listings is a documented need for hand-held assistive devices:

> Here, treatment records establish that the claimant does not meet the criteria for Listings 1.15 or 1.18. Physical exams note good to normal muscle strength and normal sensation. While the evidence indicates that the claimant walks with a cane, treatment records note that she is able to walk without assistance.

(Tr. 225). Finally, the ALJ included in Ms. Cox-Bottoson's RFC that she needs a cane for walking and made no mention of needing one for balancing, though the ALJ limited her to occasional balancing. (*See* Tr. 226)

Ms. Cox-Bottoson contends the ALJ should have addressed whether she needs a cane to balance and points to evidence documenting her use of a cane, her balancing issues, and that her back pain is associated with dizziness and lightheadedness. (ECF #10 at PageID 1455) (citing Tr. 607, 617, 634, 684, 718, 921, 1153, 1189, 1190, 1377). But this evidence does not establish a cane was medically required for balancing. Most probative is Dr. Shrefler's opinion stating Ms. Cox-Bottoson is prescribed a cane and a walker. (*See* Tr. 1377). But that observation does not describe "the circumstances for which [the cane] is needed (*i.e.*, whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)" to meet the standard for "medical documentation." SSR 96-9p, 1996 WL 374185, at *7. Ms. Cox-Bottoson also cites her doctors' progress notes, but they suffer from the same problem—merely documenting her use of a cane or walker at home but not describing the circumstances for which the device is needed. (*See* Tr. 607, 617, 634, 684, 718). And there can be no question that reporting the use of a cane does not prove its use was medically required. *See Morrow v. Comm'r of Soc. Sec.*, No. 1:18-cv-

18

403, 2019 WL 1428199, at *12 (N.D. Ohio Mar. 29, 2019) ("[T]he provider merely observed Morrow using a cane or walker, without imposing a requirement that he do so"). Thus, there is no medical documentation that Ms. Cox-Bottoson medically required a cane to balance.

The evidence in the record around Ms. Cox-Bottoson's balance and her use of a cane was conflicting. Ms. Cox-Bottoson cites examination findings that she can walk without assistance though with an antalgic gait. (Tr. 1189-90). But as discussed above, other examinations yielded findings of a stable and normal gait. (*See* Tr. 228). When there is conflicting evidence concerning the need for a cane, it is the task of the ALJ, not this court, to resolve conflicts in the evidence. *Morrow*, 2019 WL 1428199, at *12. Ms. Cox-Bottoson also cites evidence that she loses her balance sometimes when standing up or ascending stairs. (Tr. 617, 684, 718, 921, 1153). The ALJ recognized her balance issues by limiting her to occasionally balancing; occasionally climbing ramps and stairs; and never climbing ladders, ropes, or scaffolds. Though Ms. Cox-Bottoson argues the record supports greater restrictions, substantial evidence supports the ALJ's conclusion that a cane was not medically required for balancing. I thus decline to order remand on this basis.

## Conclusion

Following review of the arguments presented, the record, and the applicable law, I **AFFIRM** the Commissioner's decision denying supplemental security income.

Dated: November 17, 2025

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE